**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |
|---|---|
| MICHAEL WARSHAWSKY and MICHAEL STEINHAUSER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 20-cv-00562 |
| v. | |
| CBDMD, INC. and CBD INDUSTRIES LLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**AND TO DIRECT NOTICE OF SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iv

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................. 2

        A.     Nature of the Action .................................................................................. 2

        B.     The Litigation ............................................................................................ 3

        C.     Settlement Negotiations ............................................................................ 3

III.    THE TERMS OF THE PROPOSED SETTLEMENT ............................................ 4

        A.     The Proposed Settlement Class .................................................................. 5

        B.     Cash Payment for Reimbursement of Expenses and Inconveniences ................ 5

        C.     Remedial Measures Attributable to the Settlement ............................................ 6

        D.     Claims Referee ........................................................................................... 7

        E.     Release ........................................................................................................ 7

        F.     Exclusion and Objection Procedures .................................................................. 7

        G.     Proposed Notice Plan .................................................................................. 7

        H.     Notice and Settlement Administrator ............................................................... 8

        I.     Notice And Settlement Administration Costs .................................................. 9

        J.     Attorneys' Fees And Expenses And Service Awards ....................................... 9

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .......... 10

        A.     Certification Of The Proposed Class For Settlement Purposes Is Appropriate 10

B.      The Proposed Settlement Class Meets the Requirement of Rule 23(a) ........... 11

C.      The Requirements of Rule 23(b)(3) Are Met ................................................... 14

D.      The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Preliminarily Approved ..................................................................................... 15

V.     THE COURT SHOULD ORDER DISSEMINATION OF THE NOTICE .............. 21

VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS SETTLEMENT CLASS COUNSEL ................................................................................................................ 22

VII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ......................... 23

VIII.  CONCLUSION ........................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Henderson*, 197 F.R.D. 162 (D. Md. 2000) ..................................................... 12

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................... 10, 11, 15

*Armstrong v. Bd. of School Directors*, 616 F.2d 305 (7th Cir. 1980) ........................... 10

*Brown v. Nucor Corp.*, 785 F.3d 895, 922 (4th Cir. 2015) ........................................... 15

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) .................. 12

*Crandell v. U.S.*, 703 F.2d 74, 75 (4th Cir. 1983) ...................................................... 10

*Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648
(4th Cir. 1967) ................................................................................................. 12

*Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003) .......................... 11

*Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582
(E.D.N.C. Sept. 26, 2016) ................................................................................. 10

*Holsey v. Armour & Co.,* 743 F.2d 199 (4th Cir. 1984) ............................................... 12

*Hutson v CAH Acquisition Co. 10, LLC*, No. 1:15CV742, 2016 US Dist LEXIS 107329
(M.D.N.C. Aug. 15, 2016) ............................................................................ 12, 13

*In re A. H. Robins, Co., Inc.,*880 F.2d 709 (4th Cir. 1989) ......................................... 11

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)) ............................................ 14

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS
119870 ............................................................................................................ 14

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737 (N.D. Ohio Aug. 12,
2019) .............................................................................................................. 19

*In re Target Corp. Customer Data Security Breach Litig.*, 2015 WL 7253765 (D. Minn. Nov. 17,
2015) .............................................................................................................. 19

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ......................................... 19

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................... 19

*Krakauer v Dish Network L.L.C.*, No. 14-cv-333, 311 FRD 384 (M.D.N.C. 2015) ................... 11

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138(4th Cir. 2001) ......................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................... 22

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) .................................................... 15

*Pender v. Bank of Am. Corp.*, 269 F.R.D. 589 (W.D.N.C. 2010) ................................. 11

*S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) ........................................ 10

*Velazquez v. Burch Equip., LLC,* No. 7:14-CV-00303-FL, 2016 WL 917320
(E.D.N.C. Mar. 8, 2016) ................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) ............................... 12, 13

**Rules**

Fed. R. Civ. P.  23(a) ................................................................................ 10, 12,13

Fed. R. Civ. P.23(b)(3) .......................................................................... 11, 14, 15

Fed. R. Civ. P. 23(e) ..................................................................................... 16, 22

Fed. R. Civ. P. 23(g) ..................................................................................... 22, 23

**Treatises**

*Manual for Complex Litigation (Fourth)* (2004) ................................... 16, 18, 21, 23

iv

## I.    INTRODUCTION

Plaintiffs Michael Warshawsky and Michael Steinhauser ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, wherein they seek entry of an order: (i) granting preliminary approval of the proposed settlement as memorialized in the Settlement Agreement that was executed on April 30, 2021 (the "Settlement Agreement" or "SA")[1], attached hereto as **Exhibit 1**; (ii) approving the form and manner of giving notice of the Settlement to the certified Class and approving the form and content of the Notice; (iii) certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iv) approving the procedures set forth in the Settlement Agreement for Settlement Class Members to exclude themselves from the Settlement Class; (v) staying the Action pending Final Approval of the Settlement; (vi) staying and/or enjoining, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning any Released Claims; and (vii) setting a hearing date for the final approval of the Settlement and its terms, including the proposed distribution of funds, a motion seeking a service award to the Representative Plaintiffs, and Class Counsel's motion for attorneys' fees, costs and expenses.

The underlying action between Plaintiffs and Defendants cbdMD, Inc. and CBD Industries, LLC (collectively "cbdMD" or "Defendants") pertains to an unauthorized disclosure of certain personal information to unknown third parties. Between March 30, 2020 and May 8, 2020, and also between May 14, 2020 and May 18, 2020, cbdMD suffered a cyberattack on its eCommerce platform that accepts payment cards. Through the operation of unauthorized JavaScript code, the unauthorized JavaScript code directed customer-input HTML elements to a third-party server

---

[1] The capitalized terms used in this Memorandum are defined in the Settlement Agreement, attached hereto as Exhibit 1.

1

unaffiliated with cbdMD between March 30, 2020 at 00:03:12 UTC (Coordinated Universal Time) and the end of May 8, 2020, and again between May 14, 2020 at 21:02:57 UTC through the end of May 18, 2020. Those data elements that were directed to a non-authorized third party consisted of first and last names, shipping addresses, billing addresses, credit or debit card numbers including expiration dates and card verification values, and/or bank account numbers. Subsequently, Representative Plaintiffs filed a class action lawsuit asserting claims against cbdMD relating to the Security Incident (as defined below) (the "Litigation"). While cbdMD disputes the claims alleged in the Complaint and maintains that it has valid defenses as to liability and damages, cbdMD has agreed to provide relief to Settlement Class Members as set forth in the Settlement Agreement.

As discussed below, Plaintiffs and Class Counsel submit that the proposed Settlement is in the best interest of the Class and provides fair, just and substantial benefits to Settlement Class Members, which will be described to the class in a comprehensive Notice Plan, and it satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Plaintiffs respectfully request that the Court grant preliminarily approval of the Settlement.

## II. FACTUAL BACKGROUND

### A. Nature of the Action

Plaintiffs allege that beginning on or about September 25, 2020, cbdMD notified the U.S. Securities and Exchange Commission ("SEC"), various states' Attorneys' General, and thousands of affected customers about two incidents that occurred through the cbdMD.com website from March 30, 2020 through May 8, 2020, and again from May 14, 2020 through May 18, 2020 (the "Security Incident"). Plaintiffs further allege that hackers not only "scraped" many of cbdMD's consumers' names from Defendants' website by infecting the ecommerce platform with a "malicious code," hackers also stole customers' payment card numbers, CVV security codes,

2

credit card expiration dates, addresses, email addresses, and bank account numbers ("PII"). These criminals potentially obtained enough information to illegally use cbdMD's customers' payment cards to make fraudulent purchases, and to commit myriad financial crimes and fraud. As a result of the Security Incident, 44,541 customers potentially had their PII compromised.

### B. The Litigation

This class action lawsuit was initially commenced on October 9, 2020, by Plaintiffs Michael Warshawsky and Michael Steinhauser, who had purchased products from cbdMD's website during the Security Incident. (ECF No. 1.) In the complaint, Plaintiffs seek to represent a class of consumers residing in the United States who made a purchase online with cbdMD between March 30, 2020 and May 8, 2020, or between May 14, 2020 through May 18, 2020. Plaintiffs allege that, due to the Security Incident, they and other similarly situated cbdMD consumers became victims of identity theft and asserted claims for negligence; declaratory judgment; unjust enrichment; and violations of Florida's Deceptive and Unfair Trade Practices Act, Florida Statute § 501.203, *et seq*. and California's Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, *et seq*. (§ 1798.150(a)). Plaintiffs filed the operative, first amended complaint on December 18, 2020, to assert a claim for monetary damages pursuant to the CCPA. (ECF No. 3.)

### C. Settlement Negotiations

Shortly after the complaint was filed, the Parties agreed to explore resolution of the claims on a class wide basis. The Parties agreed to and did retain Benjamin Picker, Esq., of the law firm Stradley Ronon Stevens & Young, LLP, a highly experienced mediator, to assist the Parties in settlement negotiations. (Declaration of Jean Sutton Martin, filed concurrently herewith ("Martin Decl.") ¶ 10, attached hereto as **Exhibit 2**). Before the mediation, cbdMD provided information relevant to Plaintiffs' allegations, including details about the Security Incident and data regarding

the potential class. Moreover, counsel for Plaintiffs provided Defendants with a proposed settlement matrix, which was then used as the basis for negotiations. Additionally, the Parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation and these were discussed with the mediator prior to mediation. *Id.* ¶ 11.

On February 3, 2021, the Parties attended a full day virtual mediation session with Mr. Picker. *Id.* ¶ 13. Attorneys for both parties attended the mediation, as well as two representatives for cbdMD and a representative for cbdMD's insurer. *Id.* ¶ 13. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. *Id.* ¶ 14. With the assistance of Mr. Picker, the Parties were able to reach a negotiated resolution on a class-wide basis that provides both injunctive and monetary relief to Settlement Class Members.

On March 4, 2021, the Parties filed a Joint Motion advising the court of a mediated settlement between the Parties and requesting an order from the Court setting March 31, 2021 as the deadline for Plaintiffs to file their Motion for Preliminary Approval. (ECF No. 9.) The Court granted the request, then the Parties requested an additional extension of 30 days, to April 30, 2021, to file the Motion for Preliminary Approval, which the Court also granted. (ECF Nos. 9-10.)

Since the mediation, the Parties have continued negotiating and finalizing the Settlement Agreement which is being presented to the Court. Martin Decl. ¶ 15. The Parties have worked together to refine the details of the proposed Notice Program and each document comprising the Class Notice, which are embodied in the Settlement Agreement and the Exhibits attached thereto. *Id.* ¶ 15.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the litigation and provide significant relief to the Settlement Class Members. The

Settlement provides monetary relief to compensate Settlement Class Members for inconveniences and losses as a result of the Security Incident, as well as equitable relief in the form of business practice changes, some of which cbdMD has already implemented.

### A. The Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class:

> All persons residing in the United States who made a purchase online with cbdMD between March 30, 2020 at 00:03:12 UTC (Coordinated Universal Time) and the end of May 8, 2020, and or between May 14, 2020 at 21:02:57 UTC through the end of May 18, 2020.

SA § 1.26.

### B. Cash Payment for Reimbursement of Expenses and Inconveniences

Defendants have agreed to make available the following relief to Settlement Class Members who submit valid Claim Forms as noted below. The two categories of monetary relief available to Settlement Class Members are: (1) Expense Reimbursement, and (2) Extraordinary Expense Reimbursement. Settlement Class Members may make claims under both categories of monetary relief. Total reimbursement under this Settlement is subject to an aggregate cap of $300,000 for all claims. SA § 2.3.

#### 1. Expenses Reimbursement

Class Members are eligible to receive reimbursement of up to $210 (in total) each for out-of-pocket expenses resulting from the Security Incident such as: card replacement fees; late fees; overlimit or overdraft fees; interest; other bank or credit card fees; postage; mileage; incidental expenses resulting from lack of access to a payment card or account; up to $80 in costs associated with obtaining credit monitoring and identity theft protection; reimbursement of up to three (3) hours of documented lost time (at $20 per hour) spent dealing with replacement card issues or in

5

reversing fraudulent charges (only if at least one full hour was spent and if it can be documented with reasonable specificity); and an additional $20 payment for each credit or debit card on which documented fraudulent charges were incurred that were later reimbursed.

**2. Extraordinary Expense Reimbursement**

Additionally, Class Members who had other extraordinary, unreimbursed monetary losses due to the Security Incident are eligible to make a claim for reimbursement of up to $2,500. As part of the Extraordinary Expense claim, the Class Member must show that: (1) the loss is an actual, documented, and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Security Incident; (3) the loss occurred during the period from March 30, 2020 through and including the end of the Claims Deadline; (4) the loss is not an amount already covered by one or more of the categories in Section III.B.1, *supra*; and (5) a reasonable effort was made to avoid or seek reimbursement for the loss.

To receive payment for out-of-pocket expenses, the Class Member must complete the appropriate section of the Claim Form and provide documentation supporting a claim for out-of-pocket expenses. SA § 2.3.

**C. Remedial Measures Attributable to the Settlement**

An additional benefit of the Settlement is the business practice changes that Defendants have agreed to implement, continue, or maintain as a result of this Litigation. SA § 2.4. Some of these remedial measures have already been adopted by Defendants and all will be continued for a period of at least one year after the Settlement receives approval by the Court. These data security measures include among other things: 1) completing PCI Attestation of Compliance in conjunction with a Qualified Security Assessor; 2) implementing multifactor authentication for VPN access to the e-Commerce system; 3) employing a third-party expert to conduct a risk assessment of

6

cbdMD's data environment; 4) implementing additional intrusion detection and prevention applications; and, 5) designating a cyber-security specialist to oversee IT security for the company, including the e-Commerce system. SA § 2.4.

### D. Claims Referee

The Claims Referee shall be responsible for deciding certain claims that may be rejected by the Claims Administrator, upon request of the Settlement Class Member submitting such Claims, as described in the Settlement Agreement. SA §§ 2.5.3-2.5.5. The Parties recommend Bennett G. Picker, Esq., of the law firm Stradley Ronon Stevens & Young, LLP, as Claims Referee.

### E. Release

In exchange for the benefits provided under the Settlement, Settlement Class Members will release cbdMD and related entities from all known and unknown claims related to the alleged claims or events in the Complaint, as more fully described in the Settlement Agreement at § 6.

### F. Exclusion and Objection Procedures

Members of the Settlement Class can opt-out of the class by sending a written request for exclusion to the Settlement Administrator postmarked no later than 120 days after the Notice Deadline. SA § 4. Also by that time, any Settlement Class Member who wishes to object to the Settlement Agreement must file with the Clerk of the Court a written notice of the objection, along with supporting papers setting forth the objector's grounds for objection. SA § 5. The Notices and website will include the procedures for Settlement Class Members to follow in order to exclude themselves from the Settlement Class or object to the Settlement.

### G. Proposed Notice Plan

The Settlement provides a comprehensive Notice Plan which, subject to Court approval,

will be administered by the Settlement Administrator (for which Defendants will pay subject to Section § 3.2 of the Settlement Agreement). Since Defendants have the name and mailing addresses of all Settlement Class Members in their business records, the plan is for direct mail notice of the Settlement. For any mailed notices that are returned undeliverable without a forwarding address, the Settlement Administrator will email the notice to an email address provided by cbdMD for the Settlement Class Member.

The Settlement Administrator will also create a settlement website where Settlement Class Members can obtain information on the Settlement and file a Claim Form. The website will make available information and details on the Settlement, the Complaint, the long-form Notice, and Claim Form. The direct mail notice will include the website address and the fact that a more detailed Notice and a Claim Form are available through the website. Further, the Settlement Administrator will establish a toll-free help line to address Class Members' inquiries.

### H. Notice and Settlement Administrator

The Settlement Administrator will have those responsibilities set forth in the Settlement Agreement, including: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating Notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to claims administration; (e) determining validity of Claims in accordance with the Settlement Agreement; and (f) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, Defendants shall pay all related costs and expenses associated with the Notice, claims, and settlement administration. These payments to the Claims Administrator shall be made separate and apart from the relief being made available to Settlement Class Members under the Settlement.

8

The Parties recommend that RG/2 Claims Administration, an experienced claims administrator, be approved to serve as the Notice and Settlement Administrator. Defendants received project bids from multiple companies and concluded that RG/2 is well-suited to provide the notice and claims administration services needed for this Settlement. A declaration from William Wickersham of RG/2 Claims Administration LLC with additional details about the Notice Plan and RG/2's experience is attached to the Settlement Agreement (Ex. 1) as Exhibit E ("RG/2 Decl."). The Parties, therefore, respectfully request that the Court appoint RG/2 to serve as the Settlement Administrator with the authority to disseminate notice in accordance with the Settlement Agreement and to perform all other duties described in the Settlement Agreement.

## I.      Notice and Settlement Administration Costs

Defendants will pay the costs associated with providing notice to the Settlement Class and costs associated with administering the Settlement, including the costs of the Settlement Administrator. SA § 2.6. Defendants will also pay the costs associated with the Dispute Resolution process and the Claims Referee. *Id*. These costs will be paid separately by Defendants and will not reduce the relief provided for the Settlement Class. *Id*.

## J.      Attorneys' Fees and Expenses and Service Awards

After reaching agreement on benefits to Settlement Class Members, the Parties separately negotiated Proposed Class Counsel's claims for attorneys' fees, costs, and reimbursement of litigation expenses, as well as the Settlement Class Representatives' Service Awards. SA § 7; Martin Decl. ¶ 14. Defendants have agreed that Proposed Class Counsel is entitled to seek an award of reasonable attorneys' fees and expenses for prosecuting this action. Plaintiffs will apply to the Court for an award of no more than a total for both attorneys' fees and expenses of $135,000. *Id*. Defendants have agreed to pay any attorneys' fees, costs, and expenses awarded by the Court,

not to exceed $135,000, separately from the relief obtained for the Settlement Class. SA § 7.2. Proposed Class Counsel will also apply for a service award of no more than $2,500 for each of the two named Plaintiffs. Defendants have also agreed to pay any service awards approved by the Court, not to exceed $2,500 for each of the two named Plaintiffs. SA § 7.3.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts. *See Crandell v. U.S.*, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes."); *Velazquez v. Burch Equip., LLC,* No. 7:14-CV-00303-FL, 2016 WL 917320, at *1 (E.D.N.C. Mar. 8, 2016) (emphasizing the strong judicial policy in favor of settlements, including class action. This is particularly true in class actions, which typically involve complex disputes, and where settlement "minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (quoting *Armstrong v. Bd. of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (internal quotation marks omitted)).

### A.    Certification Of The Proposed Class For Settlement Purposes Is Appropriate

Prior to preliminarily approving a proposed settlement, the Court must first determine whether the proposed Settlement Class is appropriate for certification. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *2 (E.D.N.C. Sept. 26, 2016). In granting preliminary settlement approval, the Court is also requested to certify the proposed Settlement Class for purposes of the Settlement under Fed. R. Civ. P. 23(a) and 23(b)(3). For the Court to certify a class, Plaintiffs must satisfy

all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Krakauer v Dish Network L.L.C.*, No. 14-cv-333, 311 FRD 384, 388 (M.D.N.C. 2015).

The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. Rule 23(b)(3) provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." *See* Fed. R. Civ. P. 23(b)(3). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction" when considering a settlement. *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 595–96 (W.D.N.C. 2010) (quoting *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)); *see also In re A. H. Robins, Co., Inc.,* 880 F.2d 709, 740 (4th Cir. 1989) (holding that it was proper in determining certification to consider whether certification would "foster the settlement of the case with advantage to the Parties and with great savings in judicial time and services."). Further, when considering "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. at 620.

As discussed below, these requirements are met for purposes of settlement in this case. The Settlement Agreement proposes to give Settlement Class Members prompt and certain relief. This relief is particularly valuable given the litigation risks presented by this case. Under the circumstances, the settlement is more than fair, reasonable and adequate for Plaintiffs and Settlement Class Members.

**B.      The Proposed Settlement Class Meets the Requirement of Rule 23(a)**

**1.      Numerosity under Rule 23(a)(1)**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). As the Court has noted, there exists no "mechanical test" for determining numerosity has been satisfied, but rather the evaluation involves a number of factors, including "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Hutson v CAH Acquisition Co. 10, LLC*, No. 1:15CV742, 2016 WL 4289473, at *2 (M.D.N.C. Aug. 15, 2016)(quoting *Adams v. Henderson*, 197 F.R.D. 162, 170 (D. Md. 2000)).

Defendants have confirmed that the proposed Settlement Class consists of approximately 44,541 members spread throughout the United States. Defendants have the name and mailing addresses for all Settlement Class Members in its business records. *See* RG/2 Decl. ¶ 8. When considering the number of class members necessary to satisfy the numerosity requirement, courts in the Fourth Circuit have determined that as few as 18 class members were sufficient to satisfy numerosity. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *see also Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984) (a class size of approximately 60 members sufficient).

### 2.    Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" and that the class members have suffered the same injury from the alleged conduct of the defendant.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); Fed. R. Civ. P. 23(a)(2). "[O]nly those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (internal quotation marks and citation omitted). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 352. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.*

In this case, there are a myriad of common questions of law and fact, such as whether cbdMD owed a duty to protect and secure the PII of its customers, whether cbdMD breached that duty, whether cbdMD maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiffs' and Class members' PII, and whether Plaintiffs have actionable claims. These common questions of law and fact arise from the same incident—the Security Incident.

### 3. Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). Here, all of Plaintiffs' claims arise out of the same alleged conduct by cbdMD related to the Security Incident. Like commonality, typicality is satisfied here.

### 4. Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement examines possible conflicts of interest between the named plaintiffs and the proposed class, as well as the competency and conflicts of class counsel." *Hutson*, 2016 WL 4289473, at *5 (internal citations omitted).

To adequately represent the class, the class representatives must be a part of the class, possess the same interest as the class, and suffer the same injury as the class members. *Amchem*, 521 U.S. at 625-26. Here, the two Class Representatives are each a cbdMD customer, were recognized by cbdMD as having their PII potentially compromised as a result of the Security

Incident, and allegedly suffered harm as a result of the Security Incident, as did all of the other Settlement Class Members. Plaintiffs' interests are not antagonistic with the Settlement Class and no fundamental conflict exists. They have also each actively participated in the litigation of this case, and have been in regular communication with their attorneys regarding these proceedings. Plaintiffs have had, and continue to have, every incentive to litigate this case to the fullest extent and maximize the amount recovered for the entire Settlement Class.

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims, including the interviews of numerous class members who contacted Class Counsel, and the prosecution of this action. Class Counsel have a wealth of experience in litigating complex class action lawsuits, and were able to negotiate a settlement for the Settlement Class that is fair, reasonable, and adequate. The respective firm resumes for each of the attorneys seeking to be appointed Class Counsel is attached as Exhibits A and B to the Declaration of Jean Martin submitted herewith (as Exhibit 2).

C.     The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at *25 (W.D. Ky. Dec. 22, 2009) (internal quotations omitted) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). Plaintiffs allege that Rule 23(b)(3) is satisfied because, as shown by the multiple common questions of law and fact described above, "[common] questions of law or fact ...

14

predominate over any questions affecting only individual members" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001). The "main concern in the predominance inquiry" is "the balance between individual and common issues." *Brown v. Nucor Corp.*, 785 F.3d 895, 922 (4th Cir. 2015) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for settlement purposes. *See* Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Members who are dissatisfied with the settlement to object to the Settlement or to exclude themselves. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendants.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the proposed Settlement Class is appropriate.

### D. The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Preliminarily Approved

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. Rule 23(e) provides that a court may

approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The procedure for review of a proposed class action settlement is a well-established two-step process. For the first stage, a court preliminarily approves the settlement pending a fairness hearing, certifies the class for settlement purposes and authorizes notice to be given to the settlement class. *Manual for Complex Litig. (Fourth)* §21.632 at 320 (2004). Once the class has received notice and has an opportunity to object to or opt-out of the settlement, the court then holds a final settlement hearing. *Id*. §21.633 at 321-22.

The general standard by which courts are guided when deciding whether to grant preliminary approval of a class action settlement is whether the proposed settlement falls within the range of what could be found "fair, reasonable and adequate." *Id.*; *see also* Fed. R. Civ. P. 23(e)(2). Approval is proper under the amended Rule 23(e)(1)(B)(i) upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). Evaluating these factors, the proposed Settlement satisfies the standard for preliminary approval.

### 1. Adequacy of Representation

Plaintiffs have retained attorneys with extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation and who have zealously represented the Class at all times. Proposed Class Counsel have litigated numerous data breach

cases and complex class actions and have the experience to evaluate the merits of the case, the defenses lodged, risks of the litigation, and the benefits of the proposed settlement.

For more than 20 years, Jean Martin of Morgan and Morgan Complex Litigation Group has concentrated her practice on complex litigation, including consumer protection and data breach class action. Ms. Martin presently serves by appointment as interim co-lead counsel in *In re: Warner Music Group Data Breach* (Case No. 1:20-cv-07473-PGG) (S.D.N.Y.), *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.), *In Re: Ambry Genetics Data Breach Litigation,* No. 20-cv-00791 (C.D. Cal.), and *In re Brinker Data Incident Litigation*, No. 18-cv-686 (M.D. Fla.). Ms. Martin has been appointed to leadership positions in many consumer class actions and consolidated proceedings in federal courts around the country, including inter alia: *Gordon, et al. v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415 (D. Colo.) (data breach) (co-lead counsel); *Linnins v. HAECO Americas, Inc., et al.*, No. 16-cv-486 (M.D.N.C.) (employee data disclosure) (co-lead counsel); *In Re: Outer Banks Power Outage Litigation*, No. 4:17-cv-141 (E.D.N.C.) (extended island power outage due to construction practices) (class counsel); and, *McCoy v. North State Aviation, LLC, et al*., No. 17- cv-346 (M.D.N.C.) (WARN Act violations) (class counsel). Ms. Martin graduated from Wake Forest University with a Bachelor of Science in Mathematical Economics and earned her Juris Doctor degree from Wake Forest University School of Law, where she served as Editor-in-Chief of the *Wake Forest Law Review*.

M. Anderson Berry attended the University of California, Berkeley, where he majored in English and graduated with highest honors. He was inducted into the Phi Beta Kappa Honor Society and served as President of the English Undergraduate Associate. After working as a private investigator for both criminal and civil investigations in the San Francisco Bay Area, Mr. Berry graduated from U.C. Berkeley School of Law, where he was a Senior Editor for both the *Berkeley*

*Journal of Criminal Law* and *Berkeley Journal of International Law*. Before joining the Arnold Law Firm in 2017, Mr. Berry worked as an Assistant United States Attorney for the Eastern District of California. Mr. Berry has experience in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and numerous class action litigations, including: *In Re: Hanna Andersson and Salesforce.com Data Breach Litigation*, 3:20-cv-00812-EMC (N.D. Cal.) (Lead Class Counsel*); Alex Pygin v. Bombas, LLC and Shopify, et al*., 3:20-cv-04412 (N.D. Cal.)(Co-Lead Counsel); and *Delilah Parker, et al. v. Claire's Stores, Inc. et al*., 1:20-cv-05574 (NDIL) (Co-Lead Class Counsel).

### 2. Arm's Length Negotiations

The proposed Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action, under the supervision of a neutral and experienced mediator. Martin Decl. ¶¶ 13-15, 32. In addition to a full day in mediation, the Parties spent significant time negotiating the terms of the business practice changes, notices, and final written Settlement Agreement which is now presented to the Court for approval. Martin Decl. ¶¶ 14-15. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. *Id.* ¶¶ 14, 32. These circumstances weigh in favor of approval. *See* Manual for Complex Litig. at §30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

### 3. The Relief Provided for The Class Is Adequate

The relief offered by the Settlement (both monetary and equitable) is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the

risks involved in prosecuting a class action through trial cannot be disregarded. Martin Decl. ¶¶ 21-22. Plaintiffs' claims would still need to survive likely motions practice (*e.g*., a motion to dismiss and motion for summary judgment) and succeed at class certification.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement, "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged," especially in complex cases that have the potential to last for years. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig*., No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Class Members gain significant and immediate benefits without having to face further risk.

19

While Plaintiffs believe that they would prevail on their claims, there is little directly analogous precedent to rely upon. Martin Decl. ¶ 22. Beyond the merits, class certification is challenging in any case. Class certification has been denied in other consumer data breach cases and to date only one (b)(3) class has been certified in a consumer payment card data breach case. *See In re Brinker Data Incident Litig.,* No. 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020).

The Settlement will provide Class Members with significant and timely benefits which compare favorably to what Class Members could recover were they to secure a favorable judgment at trial. In the experience of Proposed Class Counsel, the monetary relief provided by this Settlement is an outstanding result, and is fair and reasonable in light of reported average out-of-pocket expenses due to a data breach.[2] In addition, the monetary benefits provided by the Settlement are in line with, or superior to, those of other settlements in data breach class actions that have been approved by other courts. *See*, *e.g., Bray, et. al. v. GameStop Corp*., No. 1:17-cv-01365 (D. Del. Dec. 19, 2018) (approving claims made settlement that would reimburse up to $235/claim including, *inter alia*, expenses for lost time, payment for each card on which fraudulent charges incurred, costs of obtaining credit report, costs of credit monitoring and identity theft protection, as well as up to $10,000/claim for extraordinary expenses); *T.A.N. v. PNI Digital Media, Inc*., No. 2:16-cv 00132, Doc. 46 (S.D. Ga. Oct. 20, 2017) (approving settlement for reimbursement up to $250/claim for out-of-pocket expenses plus up to $10,000/claim for reimbursement of extraordinary expenses).

Furthermore, the injunctive relief provided for in this Settlement is significant and ensures

---

[2] For individuals who experienced actual identity theft, a 2014 Congressional Report stated that these victims incurred an average of $365.00 in expenses in dealing with the fraud. *See* Kristin Finklea, Congressional Research Service, *Identity Theft: Trends and Issues* (January 16, 2014), p. 2, *available at:* https://fas.org/sgp/crs/misc/R40599.pdf (last visited April 29, 2021).

the rights of the class because it swiftly commits Defendants to certain security measures and protection of personal information. These remedial measures are attributable to the Settlement and are squarely consistent with the claims on presented by Plaintiffs in the Litigation. Martin Decl. ¶ 16. These commitments will ensure the adequacy of Defendants' data security practices, as well as providing protection for consumers in the future. Without this Settlement, there is little Class Members could do individually to achieve similar promises from Defendants regarding data security going forward. The Settlement is calculated to ensure that Defendants not only employs the necessary, immediate resources to address existing data security vulnerabilities, but also employs the consistent best practices and accountabilities needed for long-term, proactive data security. Accordingly, the Settlement benefits present a substantial recovery, especially considering the litigation risks described above.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other

Finally, Rule 23(e) requires that the Settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement based on expenses incurred, not on any unequitable basis. SA § 2. Because there is no disparate treatment amongst the members of the proposed Settlement Class, the Settlement merits preliminary approval.

## V. THE COURT SHOULD ORDER DISSEMINATION OF THE NOTICE

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Litig. § 21.312 (internal quotation marks omitted). The best practicable notice is that

which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The proposed Settlement provides for direct mail notice to all Settlement Class Members using contact information from Defendants' business records. This same information was used by Defendants to provide notice of the Security Incident to affected customers. Additionally, a Settlement website will be established through which Settlement Class Members can access relevant case documents, including the Complaint and notices, and file a Claim Form. As shown on Exhibit B to the Settlement Agreement (Exhibit 1), the direct mail notice that will be delivered to each Settlement Class Member will identify the website address, advise that more information regarding the Settlement may be found on the website, and give the mailing address and toll-free number of the Settlement Administrator.

The proposed Notice is designed to provide "direct notice in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(e)(1)(B). The Notice Plan is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the case, the proposed Settlement and its terms, any request for attorneys' fees and expenses and Service Awards, and the Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). *See* RG/2 Decl. ¶¶ 9-10.

## VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS SETTLEMENT CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying

or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, and as fully explained in Ms. Martin's Declaration, Proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Martin Decl. ¶ 28. Proposed Class Counsel thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiffs in this case. The proposed Settlement Class Counsel have diligently and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the Settlement of this matter to the benefit of Plaintiffs and the Settlement Class. *Id*. ¶ ¶ 29-32. Therefore, Plaintiffs request that the Court appoint Jean Martin of Morgan & Morgan Complex Litigation Group, and M. Anderson Berry of Clayeo C. Arnold, P.C. as Settlement Class Counsel.

## VII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses and  a service  award  for  the  Class  Representatives,  consider  any  objections  and  exclusions,  and determine whether to dismiss this action with prejudice. *See Manual for  Complex Litig.*  § 30.44. Plaintiffs respectfully request that the final approval hearing be scheduled for 150 days after the commencement of the Notice Program.

Toward these ends, the Parties have provided the Court with a proposed order that provides for the following schedule:

| Event | Date |
|-------|------|
| **cbdMD Provides CAFA Notice required by 28 U.S.C. § 1715(b)** | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement |
| **cbdMD Provides Notice to Class Counsel and the Court of Compliance with CAFA Requirements** | Within 10 days of providing notice to Attorneys General under CAFA |
| **Class Notice Program Commences** | Within 30 days after entry of this Preliminary Approval Order |
| **Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d)** | 90 days after the Appropriate Governmental Officials are Served with CAFA Notice |
| **Motion for Attorney's Fees, Reimbursement of Costs and Expenses, and Service Awards to be Filed by Class Counsel** | At Least 14 days before the Objection Deadline |
| **Postmark Deadline for requests for Exclusion (Opt-Out) or Objections** | 120 days after Commencement of Notice Program |
| **Postmark/Filing Deadline for Filing Claims** | 120 days after Commencement of Notice Program |
| **Motion for Final Approval to be Filed by Class Counsel** | At Least 21 days before the Final Approval Hearing |
| **Final Approval Hearing** | Approximately 150 days after Commencement of Notice Program, or _____ |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) provisionally certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and 23(e) for the purpose of effectuating a class action settlement of the claims against Defendants; (2) preliminarily approving the settlement as fair, adequate, and reasonable; (3) directing notice to Settlement Class Members consistent with the Notice Program and approving the form and content

24

of the Notices; (4) approving the procedures set forth in the Settlement Agreement for Settlement Class Members to exclude themselves from the Settlement Class; (5) staying the Action pending Final Approval of the Settlement; (6) appointing Plaintiffs as Class Representatives and Plaintiffs' attorneys as Class Counsel; (7) appointing RG/2 Claims Administration as the Notice and Settlement Administrator; and (8) scheduling a Final Approval Hearing.

Plaintiffs' Motion for Preliminary Approval is unopposed by Defendants.

Dated: April 30, 2021     Respectfully submitted,

          /s/ *Jean S. Martin*
          JEAN S. MARTIN
          **MORGAN & MORGAN**
          **COMPLEX LITIGATION GROUP**
          201 N. Franklin Street, 7th Floor
          Tampa, Florida 33602
          (813) 559-4908
          jeanmartin@ForThePeople.com

          M. ANDERSON BERRY
          **CLAYEO C. ARNOLD,**
          **A PROFESSIONAL LAW CORP.**
          865 Howe Avenue
          Sacramento, CA 95825
          (916) 777-7777
          aberry@justice4you.com

          *Proposed Class Counsel for Plaintiffs and the*
          *Settlement Class*

## CERTIFICATE OF SERVICE

I, Jean Sutton Martin, certify that I caused the foregoing to be electronically filed in this case on April 30, 2021 using the Court's CM/ECF System, thereby serving it upon all counsel of record in this case.

/s/ *Jean Sutton Martin*
JEAN MARTIN
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 559-4908
jeanmartin@ForThePeople.com